**CAROL J. BERNICK, OSB #89409**
carolbernick@dwt.com
**CAROL A. NOONAN, OSB #02407**
carolnoonan@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon 97201
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

Of Attorneys for Applied Materials, Inc.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **GREGORY ROQUE, an individual**<br><br>**PLAINTIFF,**<br><br>v.<br><br>**APPLIED MATERIALS, INC., a Delaware Corporation**<br><br>**DEFENDANT.** | Case No. CV03 1564 ST<br><br>**DECLARATION OF LINDA KNOWLES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO ABATE AND COMPEL ARBITRATION** |

1. My name is Linda Knowles and I am the Custodian of Records for Applied Materials, Inc.

2. Attached hereto as Exhibit 1 is a true and accurate copy of Gregory Roque's Employment Agreement dated September 23, 2000, which includes in Section 6 his agreement to arbitrate the claims asserted in this lawsuit.

DATED this 11th day of December, 2003.

_Linda Knowles_
Linda Knowles

Page 1 – DECLARATION OF LINDA KNOWLES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

PDX 1090810v1 49220-4

Revised 9/00

# EMPLOYEE AGREEMENT

NAME   Gregory Roque            DATE 9/23/00

DEPARTMENT   Intel al D1-B

In consideration of my employment and the compensation paid to me for my services during the term of my employment with Applied Materials, Inc. or its subsidiaries and affiliates (collectively "APPLIED"), I (Employee) agree with APPLIED as follows:

1. CONFIDENTIAL INFORMATION

   A. Confidential information shall include, without limitation, any and all information concerning (i) processes, formulas, trade secrets, innovations, inventions, discoveries, improvements, research or development and test results, specifications, data, and knowhow; (ii) marketing plans, business plans, strategies, forecasts, unpublished financial information, budgets, projections, product plans and pricing; (iii) personnel information, including organizational structure, salary, and qualifications of employees; (iv) customer and supplier information, including identities, product sales and purchase history or forecasts and agreements; and (v) any other information which is not known to the public. Except as may be authorized by APPLIED in writing, I shall hold all such confidential information in trust and confidence for APPLIED, and agree not to disclose such information to anyone outside of APPLIED or use such information for the benefit of anyone other than APPLIED, either during or after my employment with APPLIED. I further agree to deliver promptly to APPLIED on termination of my employment or at any time it may so request, all memoranda, notes, notebooks, records, reports, manuals, drawings, blueprints and any other documents or things belonging to APPLIED, including all copies of such materials, which I may then possess or have in my custody or under my control. The rights and obligations of this paragraph shall survive and continue after any expiration or termination of this Agreement or of my employment with APPLIED so long as the information specified herein shall remain confidential.

   B. I agree that I will not use or disclose any confidential information belonging to my former employer(s) during my employment with APPLIED, and I agree that I will not bring onto the premises of APPLIED any documents, records, files or other property belonging to my former employer(s).

   C. I understand that APPLIED has received and in the future will receive from third parties their confidential information subject to a duty by APPLIED to maintain the confidentiality of such information. I agree that I owe APPLIED and such third parties a duty to hold all such confidential or proprietary information in confidence and not to disclose it to others or to use it for the benefit of anyone other than for APPLIED or such third party.

Initials _GR_

1

EXHIBIT   1
PAGE   1   OF   5

EMPLOYEE AGREEMENT

2. **INVENTIONS, PATENTS, TRADE SECRETS AND COPYRIGHTS**

A. I agree that all inventions, copyrightable works and confidential information (including but not limited to new contributions, improvements, ideas or discoveries, whether patentable or not and computer source code and documentation) produced, conceived, made or first actually reduced to practice by me solely or jointly with others during the period of my employment with APPLIED (the foregoing are subsequently referred to as Creative Works), are hereby assigned to Applied Materials, Inc. and shall be the exclusive property of Applied Materials, Inc. I agree that I will:

(i) promptly disclose in detail all Creative Works to APPLIED;

(ii) at the request of APPLIED, sign and provide any and all documents, testimony or any other assistance that is reasonably necessary to assign, file, register or otherwise secure to Applied Materials, Inc. exclusive rights to Creative Works in the United States and all other countries;

(iii) accept the wages provided for my services as my sole compensation for the assignment to Applied Materials, Inc. of all rights to Creative Works and other rights granted to Applied Materials, Inc. under this Agreement. In case any invention is described in a patent application or is disclosed to third parties by me within one (1) year after terminating my employment with APPLIED, it is to be presumed that the invention was conceived or made during the period of my employment for APPLIED, and the invention will be assigned to Applied Materials, Inc. as provided by this Agreement, provided it relates to my work with APPLIED. Any Creative Works made by me prior to any association by me with APPLIED and without the confidential information and/or resources of APPLIED shall not be subject to the assignment provision of this Agreement;

(iv) waive any and all "moral rights" which I may have in such Creative Works, and to assign all such "moral rights" to Applied Materials, Inc. "Moral Rights" mean any rights to claim authorship of a Creative Work, to object to or prevent the modification of any Creative Work, or to withdraw from circulation or control the publication or distribution of any Creative Work, and any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

B. (Applicable only to employees based in California.) I understand that the provisions of this agreement do not apply to any invention which qualifies fully to be excluded pursuant to the provisions of California Labor Code Section 2870 (printed on the last page of this Agreement). I will advise APPLIED promptly in writing of any inventions I believe meet such criteria.

2

Initials [signature]

EXHIBIT 1
PAGE 2 OF 5

EMPLOYEE AGREEMENT

3. **NON-SOLICITATION OF EMPLOYEES**

During my employment with APPLIED and for a period of one (1) year after the termination of my employment with APPLIED for any reason, I agree that I shall not either directly or indirectly solicit, induce, recruit or encourage any of APPLIED'S employees to leave their employment or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of APPLIED, either for myself or for any other person or entity.

4. **CONFLICT OF INTEREST**

I agree that I will not engage in outside business activities, consulting services, or outside employment that competes with, or may have the appearance of competing with the interests of APPLIED, including but not limited to being employed by, investing in (except for publicly owned companies, in which I may own up to $25,000 in market value of shares, or 2% of outstanding shares, whichever is greater, unless the Board approves a larger amount), or providing time, materials or other services to any entity that buys from or sells to or competes with APPLIED, and/or engaging in activities that utilize APPLIED's equipment, physical plant, and/or confidential information.

Currently, I am engaged in the following outside business activities, consulting services or outside employment:

_____
_____
_____
_____

I agree that I will promptly disclose to APPLIED in detail, any change in my outside commercial or employment activities.

5. **AT-WILL EMPLOYMENT STATUS**

I understand and acknowledge that my employment at APPLIED is "at will" which means that there is no agreement, express or implied, between me and APPLIED for any definite period of employment. APPLIED and I each have a right to terminate my employment at any time, with or without cause and with or without advance notice.

3

Initials [signature]

EXHIBIT 1
PAGE 3 OF 5

EMPLOYEE AGREEMENT

6. **ARBITRATION**

APPLIED and I agree that, to the fullest extent allowed by law, and except as set forth in the last paragraph of this section, any controversy or claim arising out of or relating to my employment or the termination of my employment as against APPLIED or any of its agents or employees, and as against me, shall be finally settled by binding arbitration, employing a neutral arbitrator, and administered by the American Arbitration Association ("AAA") under its National Rules for the Resolution of Employment Disputes. Such claims shall include, but are not limited to, any claims under (as amended) Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993, the Employee Retirement Income Security Act of 1974, and any other federal, state or local statute, regulation or common law doctrine, including contract or tort, regarding employment discrimination, the terms and conditions of employment or termination of employment. Prior to invoking arbitration, I am required to exhaust all remedies as set forth in APPLIED's Open Door Policy, Human Resources Policy 6-01.

The arbitration will be conducted in the city with an AAA office nearest to where I am or was last employed. The parties are each waiving their rights to trial by jury, in exchange for arbitration. Judgment upon any award rendered in an arbitration proceeding may be entered in any court having jurisdiction of the matter. Any controversy or claim subject to arbitration by either me or APPLIED shall be deemed waived, and shall be forever barred, if arbitration is not initiated within one (1) year after the date the controversy or claim first arose, or if statutory rights are involved, within the time limit established by the applicable statute of limitations. To the extent statutory claims are asserted, the parties will have the same statutory remedies in arbitration as to those statutory claims as they would otherwise have had if such a claim had been filed in a court of law, including, where authorized by statute, compensatory and punitive damages, injunctive relief and attorneys' fees. APPLIED will pay all costs of the AAA to administer the arbitration and the costs for the arbitrator less those amounts I would otherwise be required to pay were my claims litigated in a court of law.

In any arbitration commenced pursuant to this agreement, depositions may be taken and discovery obtained as provided in the Federal Rules of Civil Procedure, subject to limitation by the arbitrator to a reasonable amount necessary for both parties to be able to present their claims and defenses. Any award by the arbitrator(s) shall be accompanied by a statement of the factual and legal bases for the award.

This agreement to arbitrate shall not apply to claims for workers' compensation or unemployment compensation or to claims for injunctive relief arising out of or related to misappropriation of trade secrets or confidential information, unfair competition or breach of any non-competition or non-solicitation agreement between me and APPLIED.

Initials

4

EXHIBIT 1
PAGE 4 OF 5

EMPLOYEE AGREEMENT

7. GENERAL PROVISIONS

A. This Agreement will be governed by the law of the state in which I am based at the time that any issue, controversy or claim arises under this Agreement.

B. If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

C. I agree that all my obligations under this Agreement shall be binding upon my heirs, executors, administrators, legal representatives and assigns.

D. I acknowledge that this is the sole Agreement between myself and APPLIED with respect to the subject matters hereof, that I have not relied upon any representation or promise not expressly stated herein, and that any modifications to this Agreement can only be made in writing signed by me and an appropriate Officer of Applied Materials, Inc.

_____
EMPLOYEE SIGNATURE

APPLIED MATERIALS
By: _____
HUMAN RESOURCES REPRESENTATIVE

Gregory J. Roque
PRINT

16 NE Tandem Way #254
HOME ADDRESS
Hillsboro, OR 97124
CITY, STATE, ZIP

SECTION 2870, CHAPTER 2, ARTICLE 3.5 OF THE CALIFORNIA LABOR CODE reads as follows:

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

Initials GR

EXHIBIT 1
PAGE 5 OF 5